DOMENGEAUX, Judge.
Sherryl Guillory filed this paternity suit, alleging the defendant, Eddie Fuselier, is the father of her minor child, Jonathan Edward Guillory. After plaintiff presented her case, the trial judge granted a directed verdict for the defendant and dismissed plaintiffs case with prejudice. Because we find that the trial judge erred in not ordering the parties to submit to blood testing, we reverse and remand for a new trial.
FACTS
Sherryl Guillory and Eddie Fuselier first met in 1981. At that time, plaintiff was only seventeen years old and defendant was married to someone else. Consequently, nothing developed between them as a result of this initial meeting. Their paths crossed again in 1985, when defendant was divorced. According to plaintiff, the couple had sexual relations on three occasions during that year: in July, on Thanksgiving night, and on New Year’s Eve. Plaintiff explained these liaisons corresponded with the semester breaks during her attendance at USL. She claims the final rendezvous resulted in the conception of Jonathan Edward, who was born on September 27, 1986.
The defendant admitted to having sex with the plaintiff, but on only one occasion in September of 1985. He contends he cannot be the father of Jonathan Edward because the child was born approximately one year after the couple’s sole sexual encounter.
On the morning of trial, plaintiff’s counsel requested the record be kept open after the presentation of evidence that day to allow the parties to submit to blood testing. The trial judge stated he would defer ruling on this request until after the trial. At the close of plaintiff’s case, which consisted only of the plaintiff’s testimony and the defendant’s cross-examination, the trial *922 judge denied the request for blood tests, granted a directed verdict for defendant and dismissed plaintiffs suit with prejudice.
Plaintiff appeals this ruling, arguing two assignments of error:
(1) The trial judge erred when he denied plaintiffs timely motion for a blood test to determine paternity.
(2) The trial judge erred when he opined that to prove paternity, plaintiff must prove “open continuous cohabitation”.
BLOOD TESTS
Plaintiff argues that the mandatory language of La.R.S. 9:396[1] requires the trial judge to grant a party’s timely request for blood tests. Defendant argues that granting plaintiffs request, which was made on the morning of trial, would have unduly delayed these proceedings, and therefore, under the terms of the statute, the trial judge properly denied the request.
A review of the record reveals that the morning of trial was not the first time plaintiff requested scientific testing. This suit was filed on May 20, 1987. On May 29, 1987, plaintiff ruled defendant into court to show cause why he should not be required to submit to such tests. Pursuant to this rule, the parties executed a consent judgment which ordered Sherryl Guillory, Eddie Fuselier and Jonathan Edward Guil-lory to submit to testing at Savoy Medical Center in Mamou, Louisiana. This judgment was signed by the trial judge on August 5, 1987. It did not specify the date on which the tests were to be conducted.
At trial, plaintiff presented evidence which showed she made at least one attempt to comply with this judgment. She testified that in October of 1987 she obtained written authorizations required for the tests from her doctor and from her son’s pediatrician. These documents were admitted into evidence as P-1. Plaintiff testified she then went to Savoy Medical Center with her son and other members of her family at a time agreed upon by defendant, but the defendant never appeared. Furthermore, she was informed by the Medical Center personnel that the facility was not equipped to perform the tests.
We find the execution of this consent judgment by all parties amounted to a timely request for blood tests as required by La.R.S. 9:396. We note this judgment, as approved and signed by the trial judge, did not contain a time limitation nor did it impose an affirmative obligation on the plaintiff regarding its enforcement. Under these circumstances, the trial court should have enforced the judgment as written by ordering the parties to submit to blood testing.
Defendant further argues that even if plaintiff could produce blood tests indicating a high probability of paternity she would not have met her burden of proof at trial because her case consisted only of her testimony and that of the defendant under cross-examination. He cites La.R.S. 9:397.-3(D), which read at the time of trial:
If the court finds that the conclusion of all the experts as disclosed by the reports, based on the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly.' If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence. The test and the testimony of the mother alone shall not be sufficient grounds for determining that the man is the father of the child.
*923 In Acts 1988, No. 298, § 1, the legislature deleted the final sentence of that paragraph.
Defendant contends this statute, as it read prior to the 1988 amendment, required the mother to produce more than her own testimony, even if the blood tests, as interpreted by experts, indicated a high probability of paternity.
The Second Circuit has recently held that the 1988 amendment which deleted the final sentence of La.R.S. 9:397.3(D) is procedural in nature, and therefore, it should be applied retroactively. State v. Pesina, 541 So.2d 370 (La.App. 2nd Cir. 1989). We agree with this holding. Accordingly we find the disputed sentence to be inapplicable in the instant case. Additionally, we find the defendant’s interpretation of La.R.S. 9:397.3(D), as it read at the time of trial, is not supported either by the prior language of the statute or by the jurisprudence which interpreted it. See State v. Bolden, 519 So.2d 362 (La.App. 2nd Cir.1988).
La.R.S. 9:397.3(D) concerns a court’s disposition of the case after the experts who are to interpret the blood tests have testified. The blood tests, without expert interpretation, are meaningless to the court. Where there is no expert testimony to interpret the test results, and the only other evidence before the court is the uncorroborated testimony of the mother, then the disputed sentence merely recognized the plaintiff did not meet the burden of proving paternity by a preponderance of the evidence.
Nor is defendant’s position supported by the case he cites, Johnson v. Gant, 516 So.2d 1275 (La.App. 2nd Cir.1987). In Johnson the only evidence presented to the court was the conflicting testimony of the parties, the testimony of plaintiff’s mother that the defendant once gave the child a Bible, and the testimony of plaintiff’s expert, who concluded there was only a seventy-nine percent relative probability that the defendant was the father of the child. In that case, the Second Circuit correctly concluded the plaintiff failed to establish paternity by a preponderance of evidence, where the plaintiff’s uncorroborated testimony was combined with a relatively low paternity index.
If anything, Johnson illustrates how crucial the blood test results are to the resolution of this dispute. Other than the testimony of the expert interpreting the blood tests, the only evidence before the trial court in Johnson was the contradictory versions of the facts as presented by both parties. Under those circumstances, the inconclusive scientific results were insufficient to tip the evidentiary scale in the plaintiff’s favor. Similarly, in this case, without any test results, the only evidence before the trial court was the conflicting testimony of each party. Had the blood tests been available, the trier of fact would have been able to reach a more informed determination of the truth. Although scientific testing alone is not sufficient to prove paternity, it is persuasive and objective testimony that can help establish proof by a preponderance of the evidence. LeBlanc v. LeBlanc, 497 So.2d 1361 (La.1986), at 1364. Such evidence is probative in two respects: it can either afford the alleged father the opportunity to be excluded from paternity, or it can provide genetic evidence for the calculation of a more probative probability of paternity. Rigaud v. Deruise, 539- So.2d 979 (La.App. 4th Cir.1989).
Given both the timely request for blood tests and their significant probative value in this case, we find that the trial judge was manifestly erroneous in not holding the record open until the parties were able to comply with the court approved consent judgment.
BURDEN OF PROOF
We also find the trial judge’s decision denying the plaintiff’s request for scientific testing was based upon the application of an erroneous burden of proof.
During plaintiff’s counsel’s opening statement, the trial judge inquired, “What is she going to show? Is she gonna show continuous cohabitation?” Later, during cross examiantion of the defendant, the *924 court again inquired, “Did you ever live with her as husband and wife, in your own apartment, or in her apartment ... as husband and wife?” At the close of plaintiffs case, when the judge was explaining his ruling, he stated:
THE COURT: But the court cannot be convinced with the evidence that you had, by the preponderance of the evidence, that the child is his. It may be his. And I believe the little lady to some extent, but to prove paternity you have to have open, continuous cohabitation. This is occasional, you know.
Regarding the blood tests, the court further stated:
THE COURT: With that, I’m going to have to dismiss her suit and deny her right to get a blood test for the reason that a blood test is not an absolute for one. It only corroborates further evidence, and number two, that it would unduly (unintelligible) any further with the evidence that we have.
The trial judge apparently considered “open, continuous cohabitation” as an element of proof in the plaintiffs case, and when plaintiff failed to meet this burden, he denied her request for -blood tests. Because Louisiana law requires no such burden of proof, the trial court’s decision is manifestly erroneous. Louisiana Civil Code Article 209, which articulates the plaintiff’s burden of proof in a paternity action, requires that filiation be proved merely by a preponderance of the evidence.
The language of the trial judge alludes to prior law of filiation. As originally enacted in the Louisiana Civil Code of 1870, Article 209 allowed only three methods of proving filiation, one of which was “when the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived.” In 1980, this Article was amended to allow an illegitimate child to prove filiation by any means. Under this amendment, evidence that the mother and father were living in concubinage at the time of conception created a rebuttable presumption of filiation. In 1981, the legislature again amended that Article, deleting all references to concubinage. Now, evidence of concubinage at the time of conception is merely one method of proving filiation. See official comments to Acts 1981, No. 720.
DECREE
For the above and foregoing reasons, the judgment of the trial court is reversed.
Because the trial judge granted a directed verdict, and defendant, therefore, was not given the opportunity to present his case, we have no choice but to remand for a new trial.
REVERSED AND REMANDED FOR NEW TRIAL.

. § 396. Authority for test.
Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en deseveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child or alleged father to submit to the drawing of blood samples and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.